UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COACH, INC., a Maryland corporation; COACH SERVICES, INC., a Maryland corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SAC A MAIN, an unknown business entity; DANA LANTHIER, an individual; and DOES 1-10, inclusive,<br><br>Defendants.<br>_____/ | CASE NO. 1:12-cv-00840-LJO-SMS<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THE GRANT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>(Doc. 15) |

Plaintiffs Coach, Inc., and Coach Services, Inc., move for Entry of Default Judgment against Defendants Sac a Main and Dana Lanthier. This Court has reviewed Plaintiffs' motion and supporting documents and has determined that this matter is suitable for decision without oral argument pursuant to Local Rule 78-230(g). Having reviewed all written materials submitted and applicable law, the Court recommends that Plaintiffs' motion be granted.

**I.    Procedural and Factual Background**

Plaintiff Coach, Inc., is a Maryland corporation with its principal place of business in New York, New York. Plaintiff Coach Services, Inc., a wholly owned subsidiary of Coach, Inc., is a Maryland corporation with its principal place of business in Jacksonville, Florida. Plaintiffs manufacture, market, and sell fine leather and mixed material products including handbags, wallets, accessories, eye wear, footwear, jewelry, and watches. Plaintiffs sell their goods

///

1

1  throughout the United States through their own specialty retail stores, department stores,
2  catalogs, and internet website.
3       Plaintiffs are the worldwide owners of the trademark "COACH" and various composite
4  trademarks and assorted design components collectively referred to as "Coach Marks."  These
5  include twelve unique marks illustrated in the complaint and registered under the following
6  United States registration numbers: 751,493 (registered 06/25/1963); 1,071,000 (08/09/1977);
7  2,088,706 (08/19/1997); 3,157,972 (10/17/2006); 3,413,536 (04/15/2008); 3,251,315
8  (06/12/2007); 3,441,671 (06/03/2008); 2,252,847 (06/15/1999); 2,534,429 (01/29/2002);
9  1,309,779 (12/18/1984); 2,045,676 (03/18/1997); 2,169,808 (06/30/1998); 2,592,963
10  (07/09/2002); 2,626,565 (09/24/2002); 2,822,318 (03/16/2004); 2,832,589 (04/13/2004);
11  2,822,629 (03/16/2004); 3,695,290 (10/13/2009); 3,696,470 (10/13/2009); 3,012,585
12  (11/08/2005); 3,338,048 (11/11/2007); 2,162,303 (06/02/1998); and 2,088,707 (08/19/1997).  All
13  of the listed marks are valid, subsisting, and incontestable.
14       Plaintiffs' marks are distinctive and well-known.  For four decades, Plaintiffs and their
15  predecessors have continuously used the Coach Marks in interstate commerce in connection with
16  the sale, distribution, promotion, and advertising of their goods. Through longstanding use,
17  advertising, and registration the Coach Marks have achieved a high degree of consumer
18  recognition and constitute famous marks.  The public and the trade identify Plaintiffs as the
19  source of goods bearing the Coach Marks.
20       Plaintiffs have achieved sales volumes of over three billion dollars annually and have
21  spent over a hundred million dollars in advertising, promoting, and marketing goods bearing the
22  Coach Marks.  As a result the Coach Marks and the goodwill associated with them are valuable
23  assets of Plaintiffs.
24       Defendants operate a retail business with its office and principal place of business at 415
25  Main Street, Suite C, Murphys, California.  In March 2010, products bearing counterfeit
26  reproductions of the Coach Marks were observed and purchased in Defendants' store.  Coach
27  representatives inspected samples of the Coach-branded merchandise purchased at Sac A Main
28  and determined that the merchandise was counterfeit.  Plaintiffs never authorized Defendants to

manufacture, distribute, advertise, offer for sale, or sell any merchandise bearing any of the Coach Marks.

On May 22, 2012, Plaintiffs filed their complaint against Defendants, alleging trademark counterfeiting, federal trademark infringement, false designations of origin and false advertising, federal trademark dilution, trademark dilution under California law, and unfair competition. Plaintiffs contended that Defendants deliberately misappropriated federally designated names and service marks in their sale of counterfeit products to unfairly benefit from Plaintiffs' good will and reputation.

On May 31, 2012, Plaintiffs personally served Defendant Dana Lanthier and served Defendant Sac a Main through personal service upon Dana Lanthier. Neither Defendant answered or otherwise appeared in this action. On June 26, 2012, the Clerk entered default against both Defendants.

## II. Discussion

### A. Default Judgment

Federal Rule of Civil Procedure 55(b)(2) provides for a default judgment:

> (2) By the Court. In all other cases the party entitled to judgment by default shall apply to the court therefor; but no judgment shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

"[U]pon default, the well pleaded allegations of the complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). *See also TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, *Moore's Federal Practice* § 55.11 (3d ed. 2000).

///

**B.     Substantive Claims**

**1.     Trademark Infringement (15 U.S.C. § 1114 )**

The Lanham Act (15 U.S.C. § 1114) "allows the holder of a protectable trademark to hold liable any person who, without consent, 'use[s] in commerce any . . . registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services' which is likely to cause confusion." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). To prevail on a claim of trademark infringement under 15 U.S.C. § 1114, the plaintiff must establish that "(1) it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause customer confusion." *Department of Parks and Recreation for the State of California v. Bazaar del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

That the trademarks are registered is *prima facie* evidence that Plaintiffs own valid, protectable marks. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). Because Plaintiffs' representatives purchased counterfeit goods bearing Plaintiffs' marks in Defendants' store, the complaint adequately alleges that Defendants used Plaintiffs' trademarks in commerce. (The analysis of trademark infringement is the same under federal and California law. *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004).) The sole remaining element is the issue of confusion.

"The test of trademark infringement under state, federal, and common law is whether there will be a likelihood of confusion." *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1080 (9th Cir. 2005), *cert. denied*, 547 U.S. 1069 (2006). To determine whether there is a likelihood of confusion between the parties' allegedly similar goods and services, a court must consider eight factors: "(1) strength of mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds*, *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 810 n. 19 (9th Cir. 2003). The *Sleekcraft* factors are not an

exhaustive list of factors relevant to a judicial determination of the likelihood of consumer confusion, and courts must consider such factors as are relevant to the facts of the particular situation. *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1142 (9th Cir. 2011).

A party claiming trademark infringement is not required to prove that the alleged infringer intended to deceive consumers. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992). When an alleged infringer knowingly adopts a trademark similar to one owned by someone else, the court must assume that the public will be deceived. *Sleekcraft*, 599 F.2d at 354.

Plaintiffs allege Defendants' used the Coach Marks for counterfeit goods that are substantially similar to Plaintiffs' goods. Similarity of marks in "sight, sound, or meaning" is a critical factor is assessing the likelihood of confusion of two marks. *M2 Software*, 421 F.3d at 1082. When the products or services to which the trademark is applied are also similar to those of the mark's owner, as they are here, the likelihood of confusion is higher. *Id.*

Plaintiffs have alleged a cognizable claim for trademark infringement, well-supported by factual allegations. As discussed above, by failing to respond to the complaint, Defendants are deemed to have admitted those allegations. Accordingly, Plaintiffs are entitled to default judgment on their trademark infringement claim.

**2.  Trademark Counterfeiting (15 U.S.C. § 1114)**

Trademark infringement under 15 U.S.C. § 1114 (1) constitutes trademark counterfeiting when the infringer uses a counterfeit mark, as defined in 15 U.S.C. § 1116(d). *Henderson v. Lindland*, 2012 WL 1292496 at *1 (C.D. Cal. April 16, 2012) (No. CV 11-01350 DDP (DTBx)). The Lanham Act imposes liability for trademark counterfeiting on any person who shall "use in commerce . . . . any counterfeit . . . . of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods and services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114 (1)(a). A counterfeit mark is "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods and services sold, offered for sale, or

1  distributed and that is in use, whether or not the person against whom relief is sought knew that
2  such mark was so registered." 15 U.S.C. § 1116(d).  An infringer violates § 1116(d) when it
3  applies a mark that is identical to the registered, genuine mark belonging to another on the same
4  type of goods for which the genuine mark is registered for use.  *Louis Vuitton Malletier, S.A. v.*
5  *Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011); *Idaho Potato Comm'n v. G & T*
6  *Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).  Defendants did so here, applying
7  Plaintiffs' marks to goods produced to resemble Plaintiffs' products.  The complaint states a
8  cognizable claim of trademark counterfeiting.

### 2. False Designation and Unfair Competition (15 U.S.C. § 1125(a))

The complaint alleges that Defendants violated the statutory provisions relating to false designation and unfair competition set forth in 15 U.S.C. § 1125(a)(1).  To establish a claim under this subsection, sometimes referred to as "false advertising," a plaintiff must prove "(1) the defendant made a false statement about either the plaintiff's or its own product; (2) the statement was made in a commercial advertising or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant, or by a lessening of goodwill associated with the plaintiff's product." *Newcal Industries, Inc, v. Ikon Office Solutions, Inc.*, 513 F.3d 1038, 1052 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 2788 (2009), *quoting Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n. 4 (9th Cir.), *cert. denied*, 537 U.S. 1047 (2002).  Plaintiffs allege that Defendants' commercial use of a mark substantially similar to the Coach Marks constitutes such a false statement and is likely to mislead potential customers, diverting sales from Plaintiffs to Defendants and co-opting the goodwill associated with Plaintiffs' marks for Defendants' financial enrichment.  These allegations establish a cognizable claim for which Plaintiffs are entitled to default judgment against Defendants.

///

///

### 3. Dilution (15 U.S.C. § 1125 (c) (1) and California Business and Professions Code § 14330)

The complaint alleges a claim of dilution. Dilution refers to the diminution of a trademark's value when it is used to identify different products. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002), *cert. denied*, 537 U.S. 1171 (2003). The Ninth Circuit has explained:

> For example, Tylenol snowboards, Netscape sex shops, and Harry Potter dry cleaners would all weaken the "commercial magnetism" of these marks and diminish their ability to evoke their original associations. Ralph S. Brown, Jr., *Advertising and the Public Interest: Legal Protection of Trade Symbols*, 57 Yale L.J. 1165, 1187 (1948), *reprinted in* 108 Yale L.J. 1619 (1999). These uses dilute the selling power of these trademarks by blurring their "uniqueness and singularity," Frank I. Schechter, *The Rational Basis of Trademark Protection*, 40 Harv. L.Rev. 813, 831 (1927), and/or by tarnishing them with negative associations.

*Mattel*, 296 F.3d at 903.

When a trademark is blurred, its distinctiveness is diminished because it no longer brings to mind only the original user. *Id.* "Tarnishment occurs when a defendant's use of a mark similar to a plaintiff's [mark] presents a danger that consumers will form unfavorable associations with the mark." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999).

With the enactment of the Federal Trademark Dilution Act in 1996, the Lanham Act expanded to permit the owner of a famous mark to obtain an injunction against another person's commercial use of his mark in commerce. *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). "Although this statutory language is ungainly, its meaning seems clear: It refers to the use of a famous and distinctive mark to sell goods other than those produced or authorized by the mark's owner." *Mattel*, 296 F.3d at 903.

The purpose of anti-dilution provisions is to secure to the mark's owner the goodwill of its business and to ensure that consumers can distinguish competing producers. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992). In contrast to other trademark protection provisions, dilution focuses on protecting the integrity of the trademark rather than protecting consumers from confusion. *Mattel*, 296 F.3d at 905 (9th Cir. 2002). It also protects the owners of famous marks from those who would claim a free ride on the substantial investment that the owner of the famous mark has made in its marks. *Id.* at 903.

To prove a dilution claim, "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). The analysis is the same under both federal and California state law. *Id.* To establish that a mark is "famous," a court must consider various relevant factors, including (1) the duration, extent, and geographic reach of the advertising and publicity of the mark by the registrant and others; (2) the amount, value, and geographic extent of goods and services offered under the mark; (3) the extent of actual recognition of the mark; and (4) the nature of the mark's registration. 15 U.S.C. § 1125(c).

In Plaintiffs' complaint, the factual allegations preceding the claims are sufficient to establish the elements of dilution. The Coach Marks are famous and distinctive. Plaintiffs have used the Coach Marks for over forty years throughout the United States. They have registered the marks in the United States and throughout the world. Plaintiffs have spent over a hundred million dollars to advertise, promote, and market goods bearing the Coach Marks. For four decades, Plaintiffs and their predecessors have continuously used the Coach Marks in interstate commerce in connection with the sale, distribution, promotion, and advertising of their high-end goods. Through longstanding use, advertising, and registration the Coach Marks have achieved a high degree of consumer recognition, denoting a high-end product of a specific type and quality. The public and the trade recognize the Coach Marks as designating products produced and marketed by Plaintiffs. Plaintiffs currently use the Coach Marks in the active manufacture, marketing, and sale of their goods.

Defendants began using the Coach Marks on counterfeit products after Plaintiffs established their famous marks, seeking a free ride on the value of Plaintiffs' trademarks. Their use of the Coach Marks on products that are not manufactured or sold by Plaintiffs dilutes the Coach Marks by diminishing the marks' value as a means of identifying and distinguishing Plaintiffs' products. *See Mattel*, 296 F.3d at 903. Accordingly, Plaintiffs are entitled to default judgment against Defendants on Plaintiffs' dilution claim.

### D.   Injunction

Plaintiffs seek a permanent injunction enjoining Defendants from using the Coach Marks in connection with their sale and offer for sale of infringing products.  The Lanham Act gives the Court "the power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights.  15 U.S.C. § 1116(a).  Granting a permanent injunction is appropriate when a defendant's wrongful behavior continues or is likely to recur following the issuance of judgment.  *Pepsico, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).  "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988).

Although issuance of an injunction is not an automatic outcome when a plaintiff has proven its claims under the Lanham Act, when the defendant has failed to appear in the case, the Court cannot determine whether the defendant's wrongful behavior has stopped or whether it is likely to occur again.  *Id.*  Permanent injunctions are routinely granted in trademark cases when the defendant has failed to appear.  *Coach, Inc. v. Diva Shoes and Accessories*, 2011 WL 1483436 at *9 (N.D.Cal. April 19, 2011) (No. 10-5151 SC).  This is because a defendant's failure to appear to answer serious trademark claims against it suggests that the plaintiff would continue to be exposed to the risk of continuing harm by the defendant's misuse of the plaintiff's mark.  *Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003).

The undersigned recommends that an injunction issue in this case.

### E.   Costs

Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover the costs of this action.  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir.), *cert. denied*, 510 U.S. 815 (1993).  Plaintiffs are entitled to submit their bill of costs for this action following entry of judgment, in accordance with Local Rule 292.

///

**F.      Attorneys' Fees**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  Plaintiffs contend that, because Defendants admitted through default that they knowingly, willfully, and maliciously used Plaintiffs' marks with the intent to trade on Plaintiffs' goodwill and to injure Plaintiffs, this case is an exceptional case in which attorneys' fees should be awarded to Plaintiffs.

Whether an infringement case is exceptional is a question of law for the district court. *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005); *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1216 (9th Cir. 2003).  A trademark infringement case is exceptional when the record supports a finding that the defendant's infringement was malicious, fraudulent, willful, or deliberate. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1042 (9th Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004).  Since the factual allegations of a complaint are deemed to be true in a default judgment action, a district court may properly award attorneys' fees if the complaint alleged malicious, fraudulent, willful, or deliberate infringement. *Derek Andrew*, 528 F.3d at 702; *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002); *Televideo Systems*, 826 F.2d at 917-18.  Plaintiffs' complaint did so, alleging that Defendants appropriated the Coach Marks with the willful and deliberate intent of confusing purchasers of the source of Defendants' products and of unjustly enriching themselves by appropriating property rights belonging to Plaintiffs.  Accordingly, Plaintiffs are entitled to recover attorneys' fees in this action.  They may submit their motion for attorneys' fees for this action following entry of judgment, in accordance with Local Rule 292.

**F.      Statutory Damages**

Because these findings and recommendations recommend entry of judgment against Defendants for trademark counterfeiting, infringement, unfair competition, dilution, and false designation of origin, the Court may award Plaintiffs monetary damages.  15 U.S.C. § 1117(a).  Arguing that Defendants' default leaves them unable to prove the exact amount of damages, Plaintiffs request a statutory fee award pursuant to 15 U.S.C. § 1117(c).  Emphasizing Plaintiffs'

long use, extensive sales, and significant advertising and promotion of their products, Plaintiffs request a statutory damages award of $100,000.

The plaintiff in a case involving the willful use of counterfeit marks may elect an award of statutory damages of not less than $1000 or more the $2,000,000 per counterfeit mark for each type of goods or services sold. 15 U.S.C. § 1117(c). "[T]he plain language of the statute affords plaintiffs the right to pursue statutory damages without proving actual damages; however, the statute does not provide guidelines for courts to use in determining an appropriate award." *Microsoft Corp. v. Mop*, 549 F.Supp.2d 1233, 1237 (E.D. Cal. 2008), *quoting Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002). Determining a proper amount of damages requires a court to consider both compensatory and punitive factors. *Coach, Inc. v. Diana Fashion*, 2011 WL 6182332 at * 4 (N.D. Cal. December 13, 2011) (No. 11-2315 SC).

In the absence of further statutory guidelines, a court's determination of damages is a matter of justice. *Tiffany (NJ) Inc. v. Luban*, 282 F.Supp.2d 123, 124-25 (S.D. N.Y. 2003). Several courts have determined the amount of statutory damages in trademark cases by considering the factors developed under 17 U.S.C. § 504(c), a similar statute providing statutory damages in copyright cases. *Microsoft*, 549 F.Supp.2d at 1237. These include:

> (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."
>
> *Tiffany*, 282 F.Supp.2d at 125, *quoting Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986). *See also Microsoft Corp. v. PC Express,* 183 F.Supp.2d 448, 454 (D.P.R. 2001) (listing the same factors).

Because statutory damages are meant to serve as a substitute for actual damages, other courts have reasoned that statutory damages should bear some relation to actual damages. *Diva Shoes*, 2011 WL 1483436 at * 6. These courts have used § 1117(b) as a guide in estimating an appropriate amount of statutory damages under § 1117(c). *Id.*

///

Plaintiffs offer no factual rationale for the requested $100,000 damages. Although their investigator identified seven types of products bearing marks identical to or substantially indistinguishable from the Coach Marks, neither the complaint nor the motion for default judgment provide any context by which the Court can evaluate whether the requested award is just in light of compensatory and punitive considerations. As such, the requested amount of damages appears completely arbitrary. Contrast the facts alleged in this case with the declaration of Plaintiffs' investigator in *Diva Shoes*, which detailed the number and type of counterfeit items that the defendant displayed for sale, provided the purchase price for a single Coach bag purchased from the defendant, and alleged the time period in which the defendant had dealt in counterfeit Coach goods.

The undersigned acknowledges that Defendants' failure to appear in this action renders Plaintiffs unable to provide the financial detail required to calculate a damages award under § 1117(b). Nonetheless, Plaintiffs have the ability to provide further factual information than has so far been provided to the Court, and that information will enable to Court to reach a reasoned, not arbitrary determination of statutory damages. The undersigned recommends that the Court grant Plaintiffs' request for statutory damages in an amount to be determined following Plaintiffs' submission of additional proof of the financial basis for their calculation of the requested $100,000 damages.

IV.     **Recommendation**

The undersigned **RECOMMENDS** that judgment be entered in this action against Defendants; that an injunction issue permanently restraining Defendants from the use of any of Plaintiffs' registered marks; that Plaintiffs be awarded costs and attorneys' fees; and that Plaintiffs be awarded statutory benefits in an amount to be determined following Plaintiffs submission of facts and rationale forming the basis for the request for $100,000 statutory damages.

These Findings and Recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. §

631(b)(1)(B) and Rule 305 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court, serving a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 6, 2012**            /s/ Sandra M. Snyder
                                          UNITED STATES MAGISTRATE JUDGE